## MOORE *vs.* WILKINS.

An individual is to be taxed in the place of his domicil, or home; and not where he is personally residing for a mere temporary purpose, having a home in some other place.

The plaintiff in 1836 went to H., with his wife, to reside, under an engagement to preach there for a year; and the time having expired, went with his wife to her father's in B., on a visit, about the middle of March. In the course of that month he made an engagement to preach a year in M., commencing on the first Sabbath in April, and actually went to M. on the first of April to commence that engagement; his wife remaining a few days longer at her father's, and he returning there for the purpose of completing his visit; after which both resided in M. There being no evidence that he had any intention of returning to H., nor that he had any home elsewhere, or any intention of going to any other place after the termination of his engagement at M.—*Held*, that he had a domicil in that town on the first of April, and was lawfully taxed there.

TRESPASS, for seizing and detaining the plaintiff's horse, until he paid $35·53.

Moore *v.* Wilkins.

Plea, the general issue, with a brief statement in justification.

The action was submitted to the determination of the court upon a statement of facts, from which it appeared that the defendants were selectmen of Merrimack, for the political year commencing on the second Tuesday of March, 1837, duly elected and qualified ; and that, in the spring of that year, they assessed a tax against the plaintiff, for his poll, horse, and one hundred shares in the Farmer's Bank, and committed the same to the collector of taxes, with their warrant ; by virtue of which the collector distrained the plaintiff's horse, and detained him until he paid the tax.

It was further agreed that the plaintiff, with his wife, went to the town of Hooksett, about the middle of March, 1836, about which time he commenced the performance of one year's services as a preacher there—that they resided there until about the middle of March, 1837, when they went to her father's, in the town of Bedford—that the plaintiff went from Bedford to Hooksett, and preached the last two Sabbaths in March, 1837, which were two Sabbaths more than the year for which he engaged, when he went to Hooksett—that in the latter part of March, 1837, the plaintiff contracted with a religious society, whose meeting-house is in the town of Merrimack, to supply their pulpit one year, commencing on the first Sabbath, being the second day, of April, 1837—that on the 30th day of March, 1837, being the annual fast, the plaintiff went to Merrimack, and preached gratuitously in said meeting-house, and returned the same day to his wife's father's, in Bedford, where they were visiting—that the plaintiff went again from Bedford to Merrimack, on Saturday, the first day of April, 1837 ; put up at the house where himself and wife boarded the following year ; preached in said meeting-house on the second day of April, 1837 ; and the next following morning returned to Bedford, where he remained till Saturday, the eighth day of April, 1837, on which last mentioned day he went again to

Merrimack ; preached there April 9th, and returned to Bedford in the evening of the 10th—that on Tuesday, the 11th, the plaintiff and his wife went, with their baggage, to Merrimack ; where the plaintiff commenced boarding, by the week—that his wife proceeded the same day to Nashua, and two days after returned and commenced her residence, as a boarder, with her husband.   And it was further agreed that the plaintiff was not taxed that year in Bedford, or in any other place, for his poll, or any of the property taxed by the defendants.

If, upon the foregoing statement, the court should decide that the plaintiff was legally taxed in the town of Merrimack that year, the plaintiff was to become nonsuit ; otherwise judgment to be rendered in his favor, for his damages and costs.

*S. K. Livermore,* for the plaintiff, contended that the case did not show that the plaintiff had his abode in Merrimack at the time.   1 *N. H. Laws* 553 ; 2 *Ditto* 309.

*J. U. Parker,* for the defendants.   The plaintiff had no legal residence in Hooksett or at Bedford.   He must have been taxed, if taxed at all, in Merrimack.   3 *N. H. Rep.* 123, *Shattuck* vs. *Maynard ;* 10 *Mass. R.* 488, *Putnam* vs. *Johnson.*

If a married man has two places of residence, at different times in a year, that will be his domicil which he describes as such.   *Story's Confl. of Laws* 46.

His actual residence, on the first of April, being in Merrimack, the selectmen had a right to tax him ; and he must pay the tax, unless he can show a legal residence somewhere else.   He shows no legal residence elsewhere, nor any personal residence, except on that day he was at Bedford with his wife on a visit.

PARKER, C. J. The statute of July 7, 1837, cited by the plaintiff's counsel, enacts, that "the inhabitants of the several towns in this state shall annually exhibit to the selectmen a just and true account of their polls and estates, rateable by law ;" and that the "invoice shall be taken of what the respective inhabitants had and possessed on the first day of April, and shall be taken sometime in the same month. And in case any person shall remove from any town on or after the first day of April, he shall pay his taxes that year in the town from which he removed." 1 *N. H. Laws* 553.

By the term inhabitants, as here used, must be understood persons who have their homes in the towns where the invoice is to be taken, and not persons who are there for mere temporary purposes, having a home or dwelling place in some other town.

By another statute, passed June 26, 1837, " every male inhabitant of each town in this state," &c., being a native or naturalized citizen of the United States, of the age of twenty-one years and upwards, has a right, " at the annual meetings of the inhabitants of said towns and places, to vote in the town or place in which he dwells and has his home." 1 *N. H. Laws* 466. No doubt is entertained that such person is to vote in the place of his domicil. So, one enrolled in the militia is to perform military duty in the place of his domicil. 3 *N. H. Rep.* 123, *Shattuck* vs. *Maynard.* And so every person who has a domicil in this state is to be taxed for his poll and his personal property generally, in the place of his domicil. There are certain exceptions, respecting the taxation of some species of property, which are not material in this case.

Cases which involve questions respecting domicil are often those of most difficult solution.

" Two things must concur to constitute domicil ; first, residence ; and, secondly, intention of making it the home of the party ;" but " in many cases actual residence is not indispensable to retain a domicil, after it is once acquired." *Story's Confl. of Laws* 42.

The more correct principle is said to be, that the original domicil is not gone until a new one has been actually acquired. *Story's Confl.* 47 ; 5 *Ves. R.* 787, *Somerville* vs. *Somerville.* If there may be a case in which a man has no domicil, this does not seem to be of that character. On the facts before us, the plaintiff had his home or domicil in Hooksett, or Merrimack. There is nothing to show where he resided before he went to Hooksett, and of course nothing to show that on taking up his residence there he retained any domicil elsewhere. He went there under a temporary engagement for a year ; but he may well have contemplated remaining there an indefinite time, having no other home to return to, and having, so far as appears, no intention, at that time, of removing to any other place. But he left Hooksett in March, 1837, without any intention of returning there ; and he contracted to supply the pulpit in Merrimack for a year, commencing on the first Sabbath in April, and actually went to that place on the first day of April. His personal residence, with his wife, at Bedford, during part of March, and again for a few days in April, being merely temporary, for the purpose of visiting at her father's, neither gave him a right to vote there, or made him liable to taxation in that town.

Had the plaintiff removed from Hooksett on the first day of April, he would have been taxable there, under the provisions of the act of 1827, even if he acquired a new domicil on that day in Merrimack. But he actually removed before that time. Before that time, also, he had made his engagement to go to Merrimack. On the first of April, 1837, he was personally resident in Merrimack, in pursuance of his engagement to preach there a year. He must be understood to have had the same intention of residing there an indefinite time, that he had of remaining in Hooksett, when he went there ; for he had abandoned his home in Hooksett, with no intention of returning there ; he had taken up his personal residence in Merrimack, with an intention of pursuing his

Moore *v.* Wilkins.

calling there, for a year at least; he had no home to return to, elsewhere; and, so far as appears, no intention of going to any particular place at the expiration of that time. We are of opinion that this is sufficient to show that he had a domicil in Merrimack on the first of April, and that he was lawfully taxed in that town.

If his residence in Hooksett was regarded as a temporary one, the result would be the same. It was also temporary at Bedford. That is very clear. His personal residence in Merrimack, on the first of April, with the intention of removing his wife there, and residing there, having no home in any other place, and no apparent intention of removing to any other, would be sufficient to constitute him an inhabitant of that place, notwithstanding he had an engagement for a year only, and was not bound to stay longer than that period.

If it might be supposed that he had a legal domicil in Hooksett, for some purposes, until the afternoon of the first of April, when he actually went to Merrimack under his engagement—by reason of a principle, that a domicil once existing is retained until another is acquired—we think he cannot be said to have removed from that place, on that day, within the intention and meaning of the statute of 1827, so as to make him taxable there, under the circumstances of this case. Whether he could have been taxed in Hooksett, upon such a principle, if no other domicil had been shown to have existed on the first of April, we need not enquire.

We have placed no stress upon the fact that he went to Merrimack on the 30th of March. Whether this was in consequence of having made an engagement, or in contemplation of making one, does not appear; but the fact might be of some importance, if the case was otherwise left in doubt.

*Plaintiff nonsuit.*